BakNet, J.,
delivered the opinion of the court:
This is a. suit brought by the claimant to recover upon quantum meruit compensation for an emergency mail service established and conducted by the Chicago and Alton Eail-way Company between Alton, Ill., and St. Louis for 15 days *406 in June, 1903, during which time regular communication between St. Louis and the east over the bridges across the Mississippi Eiver at East St. Louis and Granite City was prevented by a “ washout ” occasioned by a heavy rainfall. The Chicago and Alton Eailway Company was under contract. during said period to carry mail to East St. Louis, its western terminus, from which point a bridge extends across the Mississippi Eiver to St. Louis, and over which the trains of said railway company, as well as the trains of other railroad companies, pass in making connection with St. Louis. Some of the railroad companies cross the river to St. Louis over a bridge at Granite City, a short distance to the north. While the trains of all these companies pass over these bridges directly to St. Louis without change, they have only trackage rights over the same, and the mail routes from East St. Louis and Granite City to St. Louis over them are entirely distinct from the mail routes from the east to those places.
During the 15-day period mentioned the stations and railroad tracks both at East St. Louis and Granite City were submerged so as to prevent access to St. Louis over these bridges by any of the railroads coming from the east, and in consequence mail service by these routes for that period was interrupted. In this emergency the Chicago and Alton Eail-way Company, which was operating through Alton, Ill., en route to East St. Louis, chartered two steamboats plying on the Mississippi Eiver to carry its passengers and baggage, as well as its mail, between St. Louis and Alton until communication by way of the bridges should be reestablished. This emergency service was inaugurated June 7,1903, and on June 10 thereafter the general superintendent of said railway company wrote to Mr. Taft, superintendent of the Eailway Mail Service for that district, informing him of this fact and asked: “ Will you please advise if you will arrange for compensation for this? ” Mr. Taft’s reply is given in full in the findings, and while he did not answer the above question as categorically as he might, his answer plainly indicated that this emergency service would be accepted in lieu of the regular contract, service upon the usual terms. The other railroad companies running into St. Louis from the east *407 over these bridges availed themselves of this emergency boat service, inaugurated by the Chicago and Alton Eailway, for the transportation of their passengers, baggage, and mail, and afterwards contributed their proportionate share in payment for the same. Necessarily this boat service delivered the mails at the wharf in St. Louis, and the party having the contract to carry the mails between the Union Depot at St. Louis and the post office refusing to carry them from the wharf to the post office, the Chicago and Alton Eailway Company contracted with and paid another company for such service.
It is unnecessary to say that this emergency service was defective mail service under the contracts of the railroad companies for the transportation of the mails, and was so considered and decided by the Post Office Department; and pursuant to section 3962, Eevised Statutes, and the regulations thereunder, which are quoted in the findings, the Post Office Department deducted 50 per cent from the contract price of the railroads thus affected by this “ washout ” during said period of 15 days.
It appears by the findings that during the time of this improvised mail service the Chicago and Alton Railroad Company was the owner of the railroad which performed the service, but that the Chicago and Alton Railway Company was then operating the road, and the contract of the Government for the transportation of the mails was with the latter company. After the performance of this service (March 14, 1906) the said two companies entered into articles of agreement, by the terms of which they were consolidated under the name of one of them, the Chicago and Alton Eailroad Company. As will be seen by extracts from these articles contained in the findings, this consolidated company by virtue thereof took title to all of the “ choses in action and property of every kind and description ” belonging to either of said companies thus consolidated, including, it is unnecessary to say, the claim against the Government involved in this suit.
It is contended by the claimant that it is entitled to recover upon quantum meruit and entirely outside of its contract, excepting only as that may be a guide as to the measure *408 of damages, for carrying all of the mails which were carried by this emergency boat service; the theory of such contention being, as we understand it, that the original contract being for the carnage of the mails to East St. Louis and such emergency service having carried them to the post office in St. Louis, this difference in one of the termini of the contract route creates an entirely new obligation. On the other hand, it is contended by the Government that this improvised mail service was accepted by the Government as a defective service in lieu of the regular service contracted for,’ and that it was for such defective service that the Chicago and Alton Railway Company received 50 per cent of the contract price. We think the contention of the Government is right. The Chicago and Alton Railway Company had contracted to carry the mails to East St. Louis, and on account of the “ washout ” it could not do so. It had not only contracted to carry the mails to East St. Louis, but it was under obligation to do so upon trains which would pass directly from that point over the bridge to St. Louis, because the bridge company operated no cars or trains. It will thus be seen that if the Post Office Department had not accepted this emergency mail service the Chicago and Alton Railway Company would not have been able to perform its contract at all during said 15 days, and instead of receiving 50 per cent of the contract price would have received nothing. To state the case in another way, the Chicago and Alton Railway Company was under contract to carry the mails to East St. Louis upon trains which it would haul over the bridge to the Union Depot in St. Louis 16 times a day each way; a washout occurred which made this impossible of performance for 15 days, and during that period it carried the mails to St. Louis by an improvised mail route twice a day instead, which service was accepted by the Government at a reduced rate.
This service was in no proper sense of the word an extra service; it was a different service from that contemplated in the contract, but this difference was only as to the point where the mail was to be delivered. In short, it was a new service accepted in lieu of an agreed service impossible of performance.
*409 Of course the claimant can not recover in this suit upon quantum meruit unless it is shown that the Government is under an obligation either express, or implied to pay for the services rendered a sum in addition to that already paid. It. is not claimed that there was any express contract, and we do not see how it can be said that the facts justify the conclusion that there was an implied contract to that effect.
It should be noted that it is contended by the Government that there can be no recovery in this case for the reason that, the consolidation of the Chicago and Alton Railway Company and the Chicago and Alton Railroad Company under the name of the latter company, before particularly mentioned, constituted a transfer and assignment of the claim in this suit, which is void under section 3477, Revised Statutes, which provides, in brief, that all transfers and assignments of claims against the United States shall be void if made before the allowance of such claims and the issuing of a warrant for the payment thereof.
As this suit is decided against the claimant upon other grounds, this contention has neither been discussed nor decided.
It follows from the foregoing opinion that the defendants’' motion for a new trial must be allowed. The former findings of fact are withdrawn and new findings this day filed with conclusion dismissing the petition; and it is so ordered*